UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-10653-RGS

ANDRE PACE

v.

DEPARTMENT OF CORRECTIONS, et al.

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

March 24, 2021

STEARNS, D.J.

Andre Pace is a Massachusetts Department of Correction (DOC) inmate housed during the relevant times at Souza-Baranowski Correctional Center (SBCC) in Shirley, Massachusetts. In his federal Complaint, Pace alleges that four correctional officers at SBCC falsely told other inmates that he was a convicted child molester, causing him to be physically assaulted. Pace also asserts that when correctional officers removed him from the housing unit where he had been attacked, two of those officers used excessive force and another indecently squeezed his buttocks while conducting a body search.

On July 16, 2019, after discovery, the court dismissed several defendants sued in their official capacities, all claims against the DOC (other

than a Title II Americans with Disabilities Act (ADA) claim), and certain Massachusetts Civil Rights Act (MCRA) and common-law causes of action. The surviving claims, in addition to the Title II ADA claim against the DOC, are those brought against the correctional officers in their individual capacities – defendants Justin Salamone, Christopher J. Mascharka, David Bolduc, Jason J. Chaput, Matthew H. Valade, and Robert Duval – pursuant to 42 U.S.C. § 1983 for alleged violations of Pace's Eighth and Fourteenth Amendment rights (Count I); MCRA claims alleging violations of the Massachusetts Declaration of Rights prohibition of cruel and unusual punishments (Count II); and common-law claims alleging intentional infliction of emotional distress (Count IV). *See* Dkt #1, #12. On January 27, 2021, defendants moved for summary judgment on all counts. *See* Dkt #129. Pace filed a 117-page Opposition to the motion but failed to respond to defendants' Statement of Undisputed Facts.[1]

---

[1] District of Massachusetts Local Rule 56.1 provides as follows.

> Opposition to motions for summary judgment must be filed, unless the court orders otherwise, within 21 days after the motion is served. A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. Copies of all referenced documentation shall be filed as exhibits to the motion or opposition. Material facts of record set forth in the statement required to be served by the moving party will be

2

BACKGROUND

On April 20, 2016, a fellow inmate attacked Pace in the L1 SBCC Housing Unit with two razors attached to a plastic handle. Pace and his attacker were placed in restraints and taken for medical evaluation. "PACE had two (2) slash type cuts to his right cheek, approximately 4 inches in length. He also had two (2) slash type cuts behind his right ear, approximately 2 inches in length." Dkt #130-5. The attacker suffered no injuries. Pace reported, and Security Officers Jose Rodriguez and Jarrel Cushinberry confirmed, that the assailant had been paid for the attack with a half-strip of Suboxone because Pace "was a known 'skinner' and any inmates with sex crimes would end up being assaulted."[2] *Id.* at 2. The SBCC

---

deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.

A pro se litigant is required to comply with the court's rules. *See* L.R. 83.5.5(d).

2 "Skinner" is "a prison slang term for someone charged with a sex crime . . . particularly a pedophile."

https://en.wikipedia.org/wiki/Talk%3ASkinner#:~:text=Is%20also%20used%20as%20a,beef)%2C%20particularly%20a%20pedophile (last visited March 12, 2021).

Pace has "multiple convictions of rape, assault with intent to rape, and indecent assault and battery," although none specifically identified as

3

Inner Perimeter Security (IPS) team identified the inmate who had ordered the assault. The IPS team undertook targeted searches for any secreted weapons and drugs in the L1 Unit and conducted a "review of the L1 housing roster [to] remove inmates for safety purposes if needed." *Id.* On April 27, 2016, Pace filed a grievance (#88690) asserting that because of the "negligence of SBCC prison officers and officials [he] was seriously indure [sic] by the hands of another inmate on April 20, 2016." Dkt #130-6. Pace's grievance was denied on May 10, 2016, *see id.,* as was his appeal to (then) Superintendent Silva on June 29, 2016, *see* Dkt #130-7.

On June 21, 2016, Pace was involved in a second physical altercation with two inmates in the H1 Housing Unit. Pace informed Officer Rodriguez that the inmates had approached him, one stating, "What you got skinner?" and that he had then been "struck with a punch." Dkt #130-8 at 1. Pace claimed that he had no prior issues with either inmate. During the IPS investigation, the assailant "stated that he was fed up with being in a 'P.C. Block' and decided to go after someone who wasn't liked by the other inmates." *Id.* at 2. The second inmate said he "jumped in to help after seeing [the instigator] knocked to the floor by the 'skinner.'" *Id.* When asked if any

---

involving children. *See Commonwealth v. Pace*, 2016 WL 4204786, at *1 (Mass. App. Ct. Aug. 10, 2016).

other sex offenders in H1 "were in danger of being assaulted . . . they answered, 'No.'" *Id.* Pace, having "no injuries," was medically cleared to go to the Segregation Unit the following day. *See* #Dkt 130-10. Pace filed another grievance (#89872) asking to be moved, claiming permanent brain damage, dizziness, and headaches that he attributed to the SBCC staff's "deliberate indifference" to the assaults. Pace filed a third grievance (#90554) claiming that during the altercation another inmate had entered his open cell and stolen his television, MP4 player, and earbuds. *See* Dkt #130-13. Pace asked the DOC to replace the items. The grievances were denied on grounds that Pace had been seen by medical staff three times after the assaults and each time denied having any medical complaints. The DOC also disclaimed any liability for inmate property losses. Superintendent Silva denied Pace's appeal on July 18, 2016. *See* Dkt #130-12.

A third reported incident occurred between Pace and a fellow inmate on February 22, 2019, in the H1 Housing unit. IPS Officer Kyle Sheldon, assigned to investigate the alleged incident, reported that Pace "refused to cooperate with the interview process."[3] Dkt #130-15. While the IPS report stated that Pace had no visible injuries, the medical staff noted that Pace

---

[3] According to Sheldon's report, the incident was provoked when Pace entered the fellow inmate's cell and accused him of having stolen his television.

5

suffered a one-centimeter skin tear to his right index finger. Dkt #130-16. After reviewing video surveillance and conducting interviews with other inmates, the IPS team determined that Pace had called the other inmate "over to his cell and initiated the altercation [in order] to be removed from the unit." Dkt #130-15 at 2.

On February 22, 2019, Pace made an accommodation request for single-cell status. The SBCC Director of Mental Health, Whitney Kraemer, reviewed the request and determined that Pace did not meet the single-cell criteria. After Kraemer consulted with Deputy Superintendent Matthew Divris, he denied Pace's request. *See* Breault Aff. ¶ 7(d) (Dkt #130-17). The DOC provided Pace with a copy of the denial and an appeal form, but he did not file an appeal. *Id.* Pace was moved from SBCC to Old Colony Correctional Center in January of 2020 and is currently housed there.

Pace filed the Complaint on April 4, 2019. The Complaint alleges that on March 21, 2016, while transferring him from H1 Housing to the L1 unit, Salamone and Valade loudly called him out as a child molester and that "this continued every shift they work[ed] while [Pace] was in the housing." Compl. at 8; *see also* Pace Aff. I (Dkt #1-1). Pace claims that his April 20, 2016 attacker had overheard Salamon and Valade's accusations and told Pace during the assault that "he did not like child molesters" while "other

6

inmates [were] yell[ing] from their cells to kill the child molester." Compl. at 8-9. Following the June 21, 2016 assault, Pace asserts that Mascharka informed inmates in the unit that Pace had been slashed because he is a "child molester." *Id*. at 10; Pace Aff. II (Dkt #137). Pace further claims that defendants Duval and Bolduc, while escorting him out of the housing unit, slammed him into the hallway wall and handcuffed him so tight that the cuffs were "cutting into [his] wrists and bending [his] wrists that . . . upon removal of the handcuffs [he] noticed cuts to both [his] wrists [which were] bleeding and [experiencing] a numbness and tingling feeling." Compl. at 11-12. Pace finally claims that during a search of his person on January 10, 2019, Duval "touch[ed] and squeeze[d]" his buttocks. *Id*. at 12.[4] Pace adds that on February 6, 2019, prior to the February 22, 2019 attack, a "John Doe" informed him that Chaput was "telling inmates that [a] child molester is coming to the block which is why [he] was attacked and assaulted." *Id*. at 11.

The DOC has a policy governing the process of verifying whether an inmate has active conflicts with other inmates or DOC staff members. *See* 103 DOC 426 (Dkt #130-4). The policy defines a conflict as "[a] relationship or situation between inmates, or between inmates and staff members, which

---

[4] Pace did not file a grievance regarding the alleged indecent touching. *See* Tocci Aff. ¶ 4 (Dkt #130-18).

7

may likely result in placing them or other inmates or staff members in danger of harm or personal injury, as such, this relationship or situation may pose a threat to the security of the institution." 103 DOC 426.01. While inmates are obligated to report situations that might jeopardize their safety, the DOC facility staff are responsible for investigating and validating any potential conflict. *See* 103 DOC 426.02(3)(a-f). Ultimately the superintendent of the facility determines whether a conflict exists or has been resolved.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires that a prisoner complaining of prison conditions exhaust "such

administrative remedies as are available" before filing suit under Section 1983 "or any other Federal law." The exhaustion of remedies requirement is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1857-1858 (2016) (rejecting a "special circumstances" exception to the exhaustion requirement created by the lower court). Because the PLRA requires "proper," not merely "simple" exhaustion of available remedies, a procedurally defective grievance does not comply with the Act. *Woodford v. Ngo*, 548 U.S. 81, 93-99 (2006) (untimely filing). The exhaustion requirement extends to available administrative appeals as well as primary grievance procedures. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-1024 (7th Cir. 2002); s*ee also* Mass. Gen. Laws ch, 127, § 38E ("An inmate shall not file any claim that may be the subject of a grievance under [ch. 127, section] 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E"). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). There is no "futility exception" to the PLRA. Thus, a prisoner seeking only money damages must satisfy the PLRA's exhaustion requirement (if any kind of responsive relief is available), even if the internal grievance procedure does not provide for monetary awards. *See Booth v.*

9

*Churner*, 532 U.S. 731, 741 (2001). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Acosta v. United States Marshals Serv.*, 445 F.3d 509, 512 (1st Cir. 2006) (quoting *Pozo*, 286 F.3d at 1025). The inmate must include on the grievance form "a complete statement of the facts relevant to the grievance." 103 CMR § 491.14(2)(d).

Count I – 42 U.S.C. § 1983

Section 1983 provides a right of action against a person acting under color of state law who violates a plaintiff's federal constitutional rights. *See* 42 U.S.C. § 1983. Pace asserts that "defendants deprived [him] of his right to be free from cruel and [unusual] punishment[s] as secured by the Eighth and Fourteenth Amendments to the United States Constitution." Compl. at 19. In support of his claim, Pace contends that defendants Salamone, Mascharka, Chaput, and Valade deliberately spread false rumors that he was a convicted child molester, thereby subjecting him to inmates' assaults. Pace further alleges that defendants Bolduc and Duval used excessive force against him.

An Eighth Amendment claim of cruel and inhumane conditions of confinement depends on proof of two elements; one objective, and the other subjective. *Staples v. Gerry*, 923 F.3d 7, 13 (1st Cir. 2019). First, "the

deprivation alleged must be, objectively, 'sufficiently serious,' . . . [and] must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, a plaintiff must prove deliberate indifference on the part of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991). "In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain. . . . While this mental state can aptly be described as 'recklessness,' it is recklessness not in the tort-law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable." *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

*Farmer*, 511 U.S. at 837. [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Even where prison officials are aware of the risk of harm, they "may

11

be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844; *see also Leite v. Bergeron*, 911 F.3d 47, 53 (1st Cir. 2018) (no evidence that a corrections officer knew of an inmate's injuries and need for immediate medical care); *cf. Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (*en banc*) ("heroic measures" to avert harm are not constitutionally required).

The *Farmer* test does not require that an inmate prove that a prison official intended to cause him harm, or even "that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer,* 511 U.S. at 842. Nor does "a subjective approach to deliberate indifference . . . require a prisoner seeking 'a remedy for unsafe conditions [to] await a tragic event [such as an] actua[l] assaul[t] before obtaining relief.'" *Id.* at 845.

Prison officials have a duty to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* at 832; *see also Benefield v. McDowell*, 241 F.3d 1267, 1272 (10th Cir. 2001) (labeling a prisoner a "snitch"); *Powell v. Schriver*, 175 F.3d 107, 115 (2d Cir. 1999)

12

(gratuitous revelation of prisoner's transsexuality); *Jensen v. Clarke*, 94 F.3d 1191, 1198-1199 (8th Cir. 1996) (random double celling of violent inmates); *Taylor v. Michigan Dep't of Corrs.*, 69 F.3d 76, 81-82 (6th Cir. 1995) (failure to adopt policies to prevent sexually vulnerable prisoners from being transferred into predatory settings); *Redman v. San Diego Cnty.*, 942 F.2d 1435, 1448 (9th Cir. 1991) (*en banc*) (housing aggressively homosexual prisoners with vulnerable heterosexuals); *Stubbs v. Dudley*, 849 F.2d 83, 86 (2d Cir. 1988) (ignoring prisoner's pleas for protection from an inmate mob); *Walsh v. Mellas*, 837 F.2d 789, 795-796 (7th Cir. 1988) (unconstitutional policy of mixing gang members and protected witnesses); *cf. Mayoral v. Sheahan*, 245 F.3d 934, 940-941 (7th Cir. 2001) (corrections guard delegated responsibility for maintaining order to an inmate gang leader).  Whether prison conditions are sufficiently harmful to establish an Eighth Amendment violation is a purely legal determination for the court to make.  *Hickey v. Reeder*, 12 F.3d 754, 756 (8th Cir. 1993).  As this cited litany of failure to protect cases establishes, Pace has, as matter of law, laid out sufficient facts to survive summary judgment as to the officers who are alleged to have endangered his safety by spreading false and provocative rumors regarding his criminal past.[5]

---

[5] On the other hand, Pace has no viable excessive force claim under the

Count II - Massachusetts Civil Rights Act (MCRA)

To prevail on a claim under the MCRA, a plaintiff must demonstrate that (1) the defendant has interfered or attempted to interfere with the plaintiff's exercise or employment of rights secured under federal or state law; and (2) said interference, or attempted interference, was by "threats, intimidation or coercion." Mass. Gen. Laws ch. 12, § 11H; *see also* Mass. Gen. Laws ch. 12, § 11I (providing private right of action). The requirement of

---

Fourteenth Amendment, or more accurately, the Eighth Amendment. "After conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.' Any protection that 'substantive due process' affords convicted prisoners against excessive force is, we have held, best redundant of that provided by the Eighth Amendment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989), quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Unnecessary and wanton inflictions of pain are those "totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (punitive use of a hitching post); *see also Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993) (use of a stun gun to enforce compliance with a simple housekeeping order was "unnecessary and wanton"); *DeSpain v. Uphoff*, 264 F.3d 965, 977-979 (10th Cir. 2001) (same, gratuitous discharge of pepper spray); *Williams v. Benjamin*, 77 F.3d 756, 764-765 (4th Cir. 1996) (refusal to allow a restrained prisoner to wash chemical mace from his eyes). The pushing and shoving and disagreeable touch that Pace attributes to Duval and Bolduc during the transfer of housing units does not as a matter of law meet the criterion of "wanton and unnecessary" infliction of pain required by the Eighth Amendment. Nor does it appear that the claim was ever formally grieved or exhausted as the PLRA requires.

threats, intimidation or coercion distinguishes the MCRA from its federal counterpart, 42 U.S.C. § 1983. While the Supreme Judicial Court has held that the "rights guaranteed in Article 26 are at least equally as broad as those guaranteed under the Eighth Amendment," the court has done little to expand the scope of those rights beyond those articulated by the federal courts in the context of Eighth Amendment claims. *Michaud v. Sheriff of Essex Cnty.*, 390 Mass. 523, 533-534 (1983); *see also Torres v. Comm'r of Correction,* 427 Mass. 611, 616 (1998) (upholding grant of summary judgment on segregated confinement claim under art. 26). For the reasons previously stated with respect to Pace's Eighth Amendment "failure to protect" claim, Pace's parallel action under the MCRA, while redundant, survives summary judgment, just as his parallel excessive force claim does not. *See Libby v. Comm'r of Corr.*, 385 Mass. 421, 435 (1982).

Count IV – Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, Pace must allege facts supporting each of the following elements: (1) that the defendants intended to inflict emotional distress; (2) that the conduct was "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community"; (3) that the actions of the defendants were the cause of his distress; and (4) that the emotional distress

15

he sustained was "severe" and "beyond all bounds of decency and . . . utterly intolerable in a civilized community." *Sena v. Commonwealth*, 417 Mass. 250, 263-264 (1994), quoting *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976); *see also Limone v. United States*, 579 F.3d 79, 91, 93-94 (1st Cir. 2009). Courts apply a "very high" standard to claims of intentional infliction of emotional distress. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996). "[L]iability cannot be predicated upon 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987), quoting Restatement (Second) of Torts § 46, cmt. d (1965)). However, "[i]n considering whether a plaintiff has made out a claim for intentional infliction of emotional distress, [Massachusetts courts] have said that the trier of fact 'would be entitled to put as harsh a face on the [defendant's actions] as the basic facts would reasonably allow.'" *Id.* at 100, quoting *Richey v. Am. Auto. Ass'n*, 380 Mass. 835, 839 (1980).

In his grievances regarding the altercations that he ascribes to his child molester status, Pace states that "due to the *negligence* of SBCC prison officers and officials [he] was seriously injured by the hands of another inmate on April 20, 2016." Dkt #130-6 (emphasis added). In his grievances regarding the June 21, 2016 incident, Pace asserts that the SBCC staff was

16

*deliberately indifferent* to inmates' assaults on him (#89872); and that, during the altercation, another inmate stole his possessions (#90554).[6] Similarly in Count IV, Pace asserts officers were "reckless," "grossly negligent," and "deliberately indifferen[t]" to his welfare. Dkt #1 at 22-23. However, in opposing summary judgment, Pace offers no evidence beyond their allegations of recklessness and negligence – his affidavit stating only that "C.O. Mascharka informed his attacker that Pace was a child molester." Dkt #137 at 1. In an affidavit submitted with his Complaint, Pace, without more, states the same about Salamone and Valade. Dkt #1-1.

Claims made against public employees based on alleged negligent or reckless conduct are barred by Mass. Gen. Laws ch. 258, § 10(c).[7] *See Parker v. Chief Just. for Admin. and Mgmt. of the Trial Ct.*, 67 Mass. App. Ct. 174, 180 (2006). In *Parker*, the Massachusetts Appeals Court stated that

> [w]ith respect to intentional torts, including intentional infliction of mental distress, claims against the public employer are barred, . . . but may be asserted against the public employee in his

---

[6] As previously stated, Pace did not file a grievance regarding the January 10, 2019 incident.

[7] Massachusetts General Laws ch. 258, provides in relevant part:

The provisions of sections one to eight, inclusive, shall not apply to: . . . (j) any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

17

individual capacity. . . . For purposes of G.L. c. 258, recklessness is considered negligent, rather than intentional, conduct. Accordingly, to the extent that the plaintiff alleges reckless behavior on the part of the probation officers, the claim is barred by the statute and dismissal was appropriate.

*Id.* (internal citations omitted). Accordingly, this claim is dismissed.

Count V – Violations of Title II of the ADA

In his Complaint, Pace asserts that the DOC violated the ADA by failing to provide him with "an individualized assessment of his mental health and treatment needs," and by refusing to place him in "suitable housing." Compl. at 24. Pace also alleges that SBCC "denied [him] benefits of the facility with [respect to] services and programs." *Id.* To survive the DOC's motion for summary judgment on Count V, Pace must identify sufficient evidence from which a reasonable jury could conclude "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker v. Universidad de P.R.*, 225 F. 3d 1, 5, (1st Cir. 2000).

However, prisons are not liable for failing to provide accommodations which were not requested, nor are they required to provide preferential treatment to disabled inmates. *See Lue v. Moore*, 43 F.3d 1203, 1206 (8th

Cir. 1994) ("[T]he Act did not require the defendants to accommodate Lue in existing prison vocational programs because Lue never requested to participate in an existing class."). As in the case of plaintiff Lue, Pace was required to file a request for a reasonable accommodation with the DOC.

> Prison officials are not required to anticipate a prisoner's unarticulated need for accommodation or to offer accommodation *sua sponte*. Indeed, such a requirement would effectively require prison officials to make assumptions about a prisoner's disability, whereas resort to assumptions and stereotypes concerning disabled persons is a harmful practice that Congress sought to deter by means of the ADA. Rather, it is incumbent on the prisoner to request accommodation in the first instance.

*Shedlock v. Dep't Of Corr.*, 442 Mass. 844, 856 (2004) (internal citations omitted). Pace made one such request in 2019, requesting single-cell status based on a disability of "depression and anxiety." Dkt #130-17 at 31. Pace's request was denied as failing to meet the medical criteria. He was provided with an appeal form and advised that he had to submit the form to the ADA coordinator (name and address was also supplied) within ten days. *Id.* at 28. Pace did not comply. *See* Breault Aff. ¶ 7(d). Therefore, he is precluded from asserting an ADA claim against the DOC. *See* 103 DOC 408: Special Accommodations for Inmates.

## ORDER

For the foregoing reasons, defendants' Motion for Summary Judgment

is <u>DENIED</u> as to the cruel and unusual punishment claims brought in Counts I and II, but otherwise <u>ALLOWED</u>. The Clerk will add the case to the court's running trial list. Given the constraints imposed by the current pandemic, the parties may well want to consider mediation. Should this path be chosen, the court will recommend that the Magistrate Judge assigned appoint one of the court's pro bono mediation counsel to represent Pace for mediation purposes only.

       SO ORDERED.

       <u>/s/ Richard G Stearns   </u>
       UNITED STATES DISTRICT JUDGE