UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-10653-RGS

ANDRE PACE

v.

DEPARTMENT OF CORRECTIONS, et al.

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR
APPOINTMENT OF COUNSEL

April 3, 2023

STEARNS, D.J

    This case has a long history as documented in the more than forty-five Orders issued to date. The case was originally filed *pro se* against seventeen defendants named in seven separate counts. After four years of litigation (including appeals), the case is currently set for trial on the single remaining issue of whether defendant Corrections Officers Christopher Mascharka, Justin Salamone, Matthew Valade, and Jason Chaput violated plaintiff Andre Pace's rights under the Eight Amendment to the United States Constitution (Count I) and the Massachusetts Civil Rights Act (MCRA) - Mass. Gen Laws ch. 12, § 11H (Count II) by purposefully spreading false and malicious rumors about Pace's unsavory criminal past that endangered his

safety in a prison setting.  *See* March 24, 2021 Order on Mot. for Summ. J. (Dkt #138).

There remains one pending motion in this case – Pace's request for replacement pro bono counsel after his parting of ways with volunteer attorneys Joseph Simons and Natalie Sreca.  While a civil plaintiff has no constitutional right to court-appointed counsel, the court, in its discretion, may request an attorney to represent a person unable to afford counsel in a case brought under 28 U.S.C. §§ 2254 and 2255.

> The First Circuit has set forth three criteria by which the court must discern the "rare" case where appointment of counsel for a habeas petitioner is warranted: (1) the likelihood of success on the constitutional claim; (2) the factual complexity and legal intricacy of the claim; and (3) the ability of the prisoner to investigate and develop the factual record necessary to the claim. *United States v. Mala*, 7 F.3d 1058, 1063-64 (1993). *See Serrano v. Dickhaut*, 2012 WL 2343730 (D. Mass. Jun.19, 2012); *see, e.g., Abdullah v. Norris*, 18 F.3d 571, 573 (8th Cir. 1994) (to determine whether appointment of counsel is warranted in a § 2254 case "a district court should consider the factual and legal complexity of the case, the petitioner's ability to investigate and present his claims, and any other relevant factors").

*Cavitt v. Saba*, No. 12-cv-11700-WGY, 2012 WL 4094358, at *1 (D. Mass. Sept. 14, 2012).  The court will consider these criteria in reverse order as items two and three impact Pace's likelihood of success on his Eighth Amendment claim.

**Ability to investigate and develop the factual record.**

When Attorney Joseph Simon agreed to take Pace's case in October of 2021, the court permitted a trial continuance and allowed a reopening of discovery to permit counsel to inspect of any disciplinary records for defendants Salamone, Mascharka, Chaput, and Valade filed between April of 2013 and April of 2019 (three years before and subsequent to Pace's April 20, 2016 incident) involving the reckless endangerment of inmates under their supervision. The reports, if any, were ordered produced by May 27, 2022, under a protective order limiting access to litigation counsel (the court having agreed to move the trial date to August 23, 2022).

After production of the reports, Attorney Simon and his associate Natalie Sreca deposed the four officers. (The DOC had earlier deposed Pace)/In addition, they made FIPA/FOIA requests to the Department of Correction seeking Pace's disciplinary reports, personalized program plans, sentence enhancements or reductions, and his admission/movement history. The DOC appropriately redacted the produced records to protect inmate identities and other third-party information citing institutional safety considerations. With a developed record, discovery closed, and Orders on motions having narrowed and focused the issues in this case, appointment of replacement counsel would have no effect on creating a record for trial.

3

**Factual complexity and legal intricacy of the claim**

Pace asserts that "defendants deprived [him] of his right to be free from cruel and [unusual] punishment[s] as secured by the Eighth and Fourteenth Amendments to the United States Constitution." Compl. at 19. In support of his claim, Pace contends that defendants Salamone, Mascharka, Chaput, and Valade deliberately spread false rumors that he was a convicted child molester, thereby exposing him to inmates' insults and assaults.

As set out in the court's summary judgment opinion, an Eighth Amendment claim of cruel and inhumane conditions of confinement requires proof of two elements; one objective, and the other subjective. *See Staples v. Gerry*, 923 F.3d 7, 13 (1st Cir. 2019). First, "the deprivation alleged must be, objectively, 'sufficiently serious,' . . . [and] must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, a plaintiff must prove deliberate indifference on the part of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991). "In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain . . . . While this mental state can aptly be described as 'recklessness,' it is recklessness not in the tort-law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of

4

impending harm, easily preventable." *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991).

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the Inference . . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." *Farmer*, 511 U.S. at 837. [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Even where prison officials are aware of the risk of harm, they "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844; *see also Leite v. Bergeron*, 911 F.3d 47, 53 (1st Cir. 2018) (no evidence that a corrections officer knew of an inmate's injuries and need for immediate medical care); *cf. Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) ("heroic measures" to avert harm are not constitutionally required).

The *Farmer* test does not require that an inmate prove that a prison official intended to cause him harm, or even "that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Nor does "a subjective approach to deliberate indifference . . . require a prisoner seeking 'a remedy for unsafe conditions [to] await a tragic event [such as an] actua[l] assaul[t] before obtaining relief.'" *Id.* at 845. Prison officials have a duty to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* at 832; *see also Benefield v. McDowell*, 241 F.3d 1267, 1272 (10th Cir. 2001) (labeling a prisoner a "snitch"); *Powell v. Schriver*, 175 F.3d 107, 115 (2d Cir. 1999) (gratuitous revelation of prisoner's transsexuality); *Jensen v. Clarke*, 94 F.3d 1191, 1198-1199 (8th Cir. 1996) (random double celling of violent inmates); *Taylor v. Michigan Dep't of Corrs.*, 69 F.3d 76, 81-82 (6th Cir. 1995) (failure to adopt policies to prevent sexually vulnerable prisoners from being transferred into predatory settings); *Redman v. San Diego Cnty.*, 942 F.2d 1435, 1448 (9th Cir. 1991) (en banc) (housing aggressively homosexual prisoners with vulnerable heterosexuals); *Stubbs v. Dudley*, 849 F.2d 83, 86

(2d Cir. 1988) (ignoring prisoner's pleas for protection from an inmate mob); *Walsh v. Mellas*, 837 F.2d 789, 795-796 (7th Cir. 1988) (unconstitutional policy of mixing gang members and protected witnesses); *cf. Mayoral v. Sheahan*, 245 F.3d 934, 940-941 (7th Cir. 2001) (corrections guard delegated responsibility for maintaining order to an inmate gang leader).

**Likelihood of success on the constitutional claim**

Whether prison conditions are sufficiently inhumane to give rise to an Eighth Amendment claim is a purely legal determination for the court to make. *Hickey v. Reeder*, 12 F.3d 754, 756 (8th Cir. 1993). In discharging its duty in this regard, the court undertook an *in camera* review of the unredacted versions of all the DOC produced documents (hundreds of pages of reports), including any disciplinary reports concerning the four defendant corrections officers or investigations involving inmate complaints in which their names figure. The court also analyzed all of Pace's disciplinary reports, personalized program plans (or refusal to participate in suggested plans), deductions from his sentence, and his prison admission and movement history. The court also read the relevant deposition transcripts.

The court finds that there is no evidence in the now fully developed record from which a reasonable jury could find that that four defendant corrections officers — Justin Salamone, Christopher Mascharka, Jason

Chaput, and Matthew Valade – maliciously or recklessly informed other inmates that Pace was a convicted child molester with any intent of causing him physical harm. Because the court finds that there is no likelihood that Pace would succeed on the merits of his Eighth Amendment and MCRA claims, the critical test for the appointment of counsel at public expense is not met.

A district court may, on its own initiative, note the inadequacy of a complaint and enter a dismissal. *Wyatt v. City of Boston*, 35 F.3d 13, 14-15 (1st Cir. 1994). As a rule, a *sua sponte* dismissal should be entered only after giving the plaintiff notice and an opportunity to address the deficiency by amending the complaint. *Future Dev. of P.R., Inc. v. Estado Libre Asociado de P.R.*, 144 F.3d 7, 14 (1st Cir. 1998). There is an exception, however, where a complaint is "frivolous," incurable by amendment, or "patently obvious that the plaintiff could not prevail." *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 30-31 (1st Cir. 2000). *See also Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("crystal clear" that the plaintiff could not prevail); *Neitzke v. Williams*, 490 U.S. 319, 329 (1989) (same, pro se litigants). Such is the case here where after four years of litigation and a full fleshing out of the record (including depositions of all the parties), it is plainly evident that there is no plausible cure for the absence of

a factual foundation undergirding the remaining claims of the Complaint. Facts that do not exist cannot be brought to life simply by the expedient of an amended pleading. Therefore, in the interests of justice and judicial economy, the case should be, and hereby is <u>DISMISSED</u>.

        SO ORDERED.

        <u>/s/ Richard G. Stearns           </u>
        UNITED STATES DISTRICT JUDGE